**SO ORDERED.**

**SIGNED this 11 day of September, 2008.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LINDA K. SMITH, | ) | Case No. 08-12091 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

### ORDER GRANTING CREDITOR XACT FUNDING, LLC'S MOTION TO DISMISS

The emergency motion of Xact Funding, LLC (Creditor) for stay relief or, in the alternative, for an order dismissing the debtor's case and barring her from refiling for a period of 180 days is before the Court following an expedited evidentiary hearing held August 27, 2008.[1]  Creditor filed this motion on August 21, 2008, two days after debtor filed her petition and one day after Creditor's sheriff's sale of debtor's home.  After reviewing the averments in the motion, the Court reviewed

---

[1] Dkt. 8.

-1-

the file in this bankruptcy case, the file in debtor's prior chapter 11 case filed June 25, 2008, No. 08-11511, and the file in debtor's prior chapter 7 case filed August 24, 2004, No. 04-14712. Based on the information the Court gleaned from its review as summarized below in the Court's finding of facts, the Court granted the expedited hearing request and set the matter for evidence on August 27, 2008. At the hearing, Creditor appeared by Carrie Mermis of Martin, Leigh, Laws and Fritzlen, P.C. The Chapter 13 trustee joined in Creditor's motion and appeared by Christopher Micale. Debtor Linda Kay Smith appeared pro se. After hearing testimony and the statements of counsel, the Court makes the following findings of fact and conclusions of law.[2]

Findings of Fact

Debtor executed and delivered to Triad Mortgage Services, LLC an adjustable rate promissory note for $125,300 on December 5, 2005.[3] Her obligation to repay this note was secured by a mortgage on the following described real estate, to wit: Lots 8 and 9, Block 3, Merriman Park Second Place, Sedgwick County, Kansas, which has a common address of 3923 East English Street in Wichita (the "English Property"). This mortgage was apparently assigned to Xact, although no evidence of that assignment was introduced at this hearing. As acknowledged by debtor during her testimony, no payments have been made on this obligation since May or June of 2006. During the year 2008, after receiving stay relief in debtor's pending chapter 7 case, Creditor pursued to

---

[2] The Court has jurisdiction of this proceeding. 28 U.S.C. § 1334. This is a contested matter under Fed. R. Bankr. P. 9014 and is a core proceeding. 28 U.S.C. § 157 (b)(2)(A) and (G).

[3] Monthly payments were scheduled to begin on February 1, 2006 with initial monthly payments of $1,192.31. Debtor's note also contained a prepayment rider, requiring debtor to pay prepayment charges.

judgment a foreclosure action in the District Court of Sedgwick County, Kansas.[4] Debtor conceded on direct examination that such a judgment had been entered and that she is obligated to Creditor for at least the principal balance of the obligation. Debtor disputes the default interest, late charges, and arrearage claims made by Creditor. The state court set a foreclosure sale of the English Property for August 20, 2008. Debtor filed this chapter 13 case on August 19, 2008, but did not timely notify Creditor's counsel of its pendency. The sale went forward, there were no bidders, and, on August 20, 2008, Creditor purchased this property at sheriff's sale. According to its counsel, Creditor became aware of debtor's bankruptcy filing on the morning of the sale as a result of its own pre-sale bankruptcy check, but its efforts to contact its local counsel and the sheriff's office to stop the sale were unsuccessful.

Debtor has filed, in all, six bankruptcy petitions in this Court since July 16, 2003. All six cases have been assigned to this Judge. Five of the six cases were filed *pro se* as chapter 13 cases and one as a chapter 11 case with the assistance of counsel. A brief summary of those cases is in order.

**No. 03-13819**

The first chapter 13 petition was filed on July 16, 2003. Debtor failed to file a creditor matrix and verification as required by Fed. R. Bankr. P. 1007(a)(1) and D. Kan. LBR 1007.1 and, despite being notified by the clerk's office of this deficiency on July 16, 2003, failed to remedy same. The Court dismissed the case on July 22, 2003. In this petition, debtor disclosed a

---

[4] Xact obtained stay relief with respect to the English Property on January 8, 2008 in Case No. 04-14712, Dkt. 196. Debtor did not oppose the stay relief. That bankruptcy case was initially filed as a chapter 13 case and was converted to a case under chapter 7 on December 3, 2004.

foreclosure action against her concerning the English Property brought by Ocwen Bank and a mortgage encumbering her rental property in favor of Union Planters Bank. Debtor was unemployed at the time she filed this bankruptcy petition.

### No. 04-10653

On February 18, 2004, debtor filed her second chapter 13 case. She again scheduled Ocwen Bank as holding the mortgage on the English Property and Union Planters holding the mortgage on her rental property. Debtor was unemployed at the time she filed her second case. While that case was pending, she retained counsel, Victor S. Nelson. Through him, she moved to dismiss the case on May 13, 2004 pursuant to § 1307(b), representing that "virtually all of the initial pleadings must be amended and substantially revised before a confirmable plan could be proposed."[5] By order entered May 13, 2004, the motion to dismiss was granted.

### No. 04-13609

On June 30, 2004, again assisted by attorney Nelson at the outset, debtor filed her third chapter 13 petition. This petition was not accompanied by schedules, a statement of financial affairs, or a chapter 13 plan and the clerk's office issued an order to correct these deficiencies by July 15, 2004. Those deficiencies were not timely corrected and on July 18, 2004, the case was dismissed. Thereafter, on September 2, 2004, Union Planters filed a motion to dismiss, or alternatively, for stay relief in which it alleged that the prior 2003 case and 2004 case had each been filed the day of a sheriff's sale of the rental property and then dismissed.[6] It also alleged that Union Planters had scheduled a further sheriff's sale of the rental property on June 30, 2004, but that this

---

[5] Dkt. 19.

[6] Dkt. 11.

case filing effectively stymied that sale as well. Finally, Union Planters asserted that the subsequent filing of 04-14712, discussed below, had also stopped a sheriff's sale of the rental property, this sale being scheduled for August 25, 2004. No order was ever entered and no hearing was ever held on Union Planters' motion.

The Court notes that prior to the filing of case No. 04-13609, debtor's counsel, Nelson, was indefinitely suspended from the practice of law by the Kansas Supreme Court. Under the then-effective rules of the United States District Court, Nelson remained at liberty to practice in the federal courts pending his reciprocal discipline by the District Court, which was imposed on August 5, 2004. Nelson subsequently filed his own chapter 13 bankruptcy on August 23, 2004. After a hearing to show cause, this Court ordered Nelson to cooperate with the bar authorities in transitioning this and several other bankruptcy cases he filed on behalf of debtors to other counsel. At the hearing, the United States Trustee advised the Court that debtor had retrieved her "file" from Nelson and proceeded to file her fourth chapter 13 case.[7]

**No. 04-14712**

On August 24, 2004, acting *pro se*, debtor filed this fourth chapter 13 case, while No. 04-13609 remained open. Debtor again failed to file schedules, a statement of financial affairs, and a chapter 13 plan with her petition. Following two requests for extensions, debtor finally filed her initial schedules and chapter 13 plan on October 7, 2004. In her statement of financial affairs, debtor listed Ocwen Bank's pending mortgage foreclosure on the English Property and Union Planters' mortgage foreclosure that had gone to judgment on the rental property. On Schedule I, debtor listed no income.

---

[7] Dkt. 9 and 15

U.S. Bank N.A., as trustee, filed a stay relief motion in this case seeking stay relief as to the English Property. This Court granted the stay relief motion on November 30, 2004; debtor did not oppose the motion.[8] On December 3, 2004, this Court entered an order granting the chapter 13 trustee's motion to covert this case to chapter 7 for cause.[9] In that order, this Court found that this was the fourth chapter 13 case filed by the debtor in a two-year span. In addition, the Court found that the debtor had failed to attend two scheduled § 341 meetings, and had failed to timely file a chapter 13 plan. Moreover, the debtor had no monthly income, and had failed to commence monthly payments as ordered. The Court subsequently denied debtor's motion to reconsider both the conversion and the stay relief order. As noted above, the debtor signed a new note and mortgage to Triad in December of 2005 and those obligations apparently sufficed to satisfy U.S. Bank's claim with respect to the English Property.

On September 30, 2004, Everhome Mortgage Company, now the successor to Union Planters, filed a stay relief motion concerning the rental property.[10] The Court granted this motion at the same November 10, 2004 hearing at which it granted the trustee's motion to convert discussed above. The chapter 7 trustee administered the rental property, collecting post-petition rent and later selling it for the benefit of the mortgagee and the unsecured creditors.

Xact filed a stay relief motion with respect to the English Property on December 18, 2007,[11] That motion was unopposed by debtor and on January 8, 2008 an order was entered granting Xact

---

[8] Dkt. 35.

[9] Dkt. 36.

[10] Dkt. 16.

[11] Dkt. 194.

-6-

Case 08-12091   Doc# 24   Filed 09/11/08   Page 6 of 16

stay relief.[12]  Xact proceeded to file and prosecute its foreclosure action in state court with respect to the English Property.

This Court granted debtor a discharge on June 13, 2005.  Debtor's attorney, Mark Lazzo, moved to withdraw on June 17, 2005.[13] The Court entered a final decree closing No. 04-14712 on August 26, 2008.  This was the only bankruptcy case of debtor that was "completed" and fully administered by the case trustee.

### No. 08-11511

While debtor's case  04-14712 was pending, she employed counsel Kevin Holloway who filed case 08-11511, a chapter 11 case, on June 25, 2008.  The chapter 11 petition was filed without the accompanying schedules and other required initial documents and without payment of the filing fee. The clerk's office issued orders to correct these deficiencies by July 10, 2008.  Debtor's chapter 11 petition was filed after Creditor Xact received a judgment in foreclosure in May and, as acknowledged by debtor, was filed on the very day of the June 25 sheriff's sale of the English Property, thwarting same.  Because debtor failed to pay the filing fee for her chapter 11 case, this Court dismissed and closed the case on July 14, 2008.

Creditor had filed a motion for stay relief and to dismiss this chapter 11 case on July 10, 2008, but that motion was never heard because of the dismissal.  Attorney Holloway filed a motion

---

[12]  Dkt. 196.

[13] Dkt. 91.  It is not clear from the docket report when Mr. Lazzo commenced his representation of debtor.  However, debtor's objection to Mr. Lazzo's withdrawal suggests he was retained in March of 2005 to amend debtor's schedules. Dkt. 97. Debtor did not appear at the hearing on July 21, 2005 and Mr. Lazzo's motion was granted.  Mr. Lazzo did not submit an order allowing his withdrawal as required by the Court and after the issuance of two notices of order due on the withdrawal motion to Mr. Lazzo (Dkt. 119 and 133), an order was finally entered on May 15, 2006. Dkt. 137.

-7-

to reopen the case on July 17, 2008 but withdrew that motion on July 28, 2008.

**No. 08-12091**

This brings us to the current chapter 13 case filed by debtor *pro se* on August 19, 2008. Creditor's sheriff's sale of the English Property was reset for August 20. On Schedule D, Xact was listed as a secured creditor on the English Property; the debt was scheduled as unliquidated and disputed. Debtor omitted Xact from the creditor matrix. This filing omitted Schedule I, Form 22C (Statement of Current Monthly Income and Disposable Income Calculation), the Statement of Financial Affairs, and a chapter 13 plan. An order to correct these filing deficiencies was issued giving debtor until September 3 to cure.[14] Debtor disclosed all her previous bankruptcy cases save the chapter 11 case. On her declaration regarding payment advices, debtor stated that she had not been employed in the 60 days before the date of the filing.

On August 21, Creditor filed the current alternative motion for relief from stay or motion to dismiss debtor's case and requested that the motion be heard on an expedited basis.[15] The Court granted Creditor an expedited hearing and conducted an evidentiary hearing on August 27, 2008.

While debtor denies that she filed the chapter 11 case to avoid a sheriff's sale, she did concede that the instant case was filed to stop the August 20 sale. As to the other sheriff's sales halted by her bankruptcy filings, debtor suggests that the temporal relationship between the sales and the filings is more coincidental than intentional. Nevertheless, she concedes that she has only made between 9 and 12 payments on Creditor's debt, that she has made no payments since May of

---

[14] The Court notes that on September 4, debtor filed a motion to extend this deadline thirty days, to October 4, 2008, to cure the filing deficiencies.

[15] Dkt. 8 and 9.

Case 08-12091   Doc# 24   Filed 09/11/08   Page 8 of 16

2006, and that a considerable arrearage exists.[16] According to Creditor's motion, that arrearage is in the amount of $34,576.99 for the period March 1, 2006 through July 1, 2008.

Debtor insists that throughout this history, she has been the victim of circumstance, bad lawyers, and ill fortune. She testified that she has suffered various leg ailments that prevented her from being employed from 2003 to now. In none of these cases does her schedule I reflect employment and, in the present case, she did not even file a schedule I. She also attributes her predicament to her lack of legal expertise. She blames her attorneys for her failure to complete all but the 2003 case, acknowledging that her failure to file a matrix and verification resulted in its dismissal. She argues that she has never wilfully dismissed a bankruptcy case, though the record does not bear that out. As noted above, her counsel dismissed No. 04-10653. All of the other dismissals resulted from omissions by her or her lawyers.

Debtor intends to fund her as-yet unfiled chapter 13 plan by obtaining a high paying sales job. She believes she can earn as much as $2500 per month. Currently, she generates income by purchasing items at auctions and reselling them on E-Bay. She cannot say what her income is from month to month. When the Court asked how she would cure the sizeable arrearage on the English Property, she did not know. She contends that the property has significant equity over the Xact mortgage and that she should be given an extension of her redemption period in order to sell it. Debtor testified that the state court shortened her redemption period to 90 days and that she requires 180 days to sell the English Property.

---

[16] Giving debtor's testimony the benefit of a doubt, the debtor has not explained how she made 9 mortgage payments when her first mortgage payment was due February 1, 2006 and she admits that she has not made a mortgage payment since May or June of 2006. Creditor's arrearage calculation reflects that debtor made no mortgage payment after the February 1, 2006 payment.

Analysis

Creditor's motion proceeds on two alternative grounds: (1) for *in rem* stay relief under § 362(d)(4)(B) of the Code, added by the 2005 BAPCPA amendments;[17] and (2) for dismissal of the case under § 1307(c) for bad faith, as evidenced by serial filings and failure to file the requisite schedules and information, together with an order under § 109(g) barring debtor from re-filing for a period of 180 days.[18]

### *In rem* Stay Relief:  § 362(d)(4)

New § 362(d)(4) states:

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either--
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to effect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. . . .

Creditor here proceeds on the basis of subpart (B). Summarized, a creditor who obtains stay relief under this subsection may operate free of the stay not only for the duration of the present case, but also in any other case for a period of two years after the order is entered and recorded in the real

---

[17] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (Apr. 20, 2005), generally effective October 17, 2005.

[18] Dkt. 8.

-10-

estate records. If such an order is entered and recorded, it has the effect of creating an exception to the stay in later-filed cases under § 362(b)(20). This relief is, therefore, strong medicine that is only indicated when the debtor has acted in a fraudulent manner.

Because of the serious nature of this remedy, the creditor is placed upon a substantial burden of proof that requires it to demonstrate the existence of a scheme that hinders, delays, *and* defrauds the creditor via multiple bankruptcy filings.[19] Unlike other references contained in the Code, the "delay, hinder and defraud" language in § 362(d)(4) is couched in the conjunctive, thus requiring a creditor to demonstrate the existence of all three elements of a debtor's intent.[20] This is substantively different from demonstrating that debtor has, for instance, transferred property with intent to "hinder, delay *or* defraud," terms of art that have long and well-understood meanings in the law of insolvency.[21] Those terms appear in the disjunctive, meaning that proof of any one of the elements will suffice to carry the day in a fraudulent transfer avoidance action. Here, however, Creditor must prove that the debtor engaged in a scheme to delay, hinder, and defraud her creditors by filing multiple cases.

No court in the Tenth Circuit has yet addressed new § 362(d)(4) in a reported case. The word "scheme" refers to a plan or design or an "artful plot."[22] On the evidence before the Court, this

---

[19] Alan N. Resnick and Henry J. Sommer, 3 COLLIER ON BANKRUPTCY, ¶ 362.05[19][a] (15th ed. Rev. 2008).

[20] *See In re Muhaimin*, 343 B.R. 159, 167-68 (Bankr. D. Md. 2006); *In re Gould*, 348 B.R. 78, 80 (Bankr. D. Mass. 2006); *In re Young*, 2007 WL 128280, * 8 (Bankr. S.D. Tex. Jan. 10, 2007).

[21] *See* § 548(a)(1) and § 727(a)(2); *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27, 33-34 (Bankr. C. D. Cal. 2006).

[22] *Duncan & Forbes Development, supra* at 32, citing Black's Law Dictionary 1372 (8th ed. 2004).

-11-

debtor is more of a plodder than a plotter. While her response to the continuing foreclosure threat to her home has been to repeatedly invoke this Court's protection, the Court cannot divine what her plan beyond filing these cases might be. This case certainly does not rise to the level of artifice demonstrated by a debtor who, for example, transfers a fractional interest of his homestead to a nonexistent entity and then files a bankruptcy case on behalf of that entity to invoke the stay. Nor does it appear that these filings were made to obscure or conceal any assets or in concert with any other legal maneuvers. No evidence of any "artful plot" beyond debtor's aim to remain in bankruptcy as long as she can was presented. She is, at day's end, simply a serial filer trying to stop a foreclosure.

Even if debtor's modus operandi merited the appellation of "scheme," Creditor did not meet its burden to prove that she did this with intent to hinder, delay and defraud her creditors. There is no question that debtor intended to hinder and delay Creditor – she admitted as much when she conceded that she filed the present case to delay the sheriff's sale. The series of actions she has taken suggest that all of her bankruptcy cases were intended at some level to stall foreclosure actions on the English Property. As such, she clearly intended to delay and hinder her creditors from enforcing their rights.

The Court is unable to conclude, however, that debtor intended to defraud Creditor. No evidence was presented of debtor making false representations to Creditor. At best, debtor failed to give notice to Creditor of the current bankruptcy filing by omitting Creditor from the matrix, failed to disclose her income, if any, by failing to file Schedule I and Form 22C in the instant case, and failed to file chapter 13 plans to address how she would pay her creditors' claims. Even if the Court opts to utilize the insolvency law gloss of "intent to defraud" as one other court has done, it

-12-

is difficult to see what badges of fraud are shown by debtor's conduct.[23] While debtor's intent to hinder and delay Creditor is manifest, her intent to defraud Creditor is not. Stay relief cannot, and need not be granted on the basis of § 362(d)(4).

**Dismissal for Bad Faith: § 1307(c)**

Creditor argues in the alternative that this case should be dismissed with prejudice and invokes § 109(g)'s 180-day bar of future filings. Section 1307(c) provides an inclusive list of grounds to dismiss a chapter 13 case for cause. The first ground is unreasonable delay that is prejudicial to creditors.[24] Debtor has filed six cases in this court in five years, all of them apparently calculated to stymy a foreclosure case and the latter three cases specifically aimed at stopping the foreclosure sale of the English Property. In none of the cases has debtor exhibited any disposable income to fund plan payments. She has filed a plan in only two of the cases. In no case has a plan been confirmed and, based upon this Court's review of the other cases' files, she has rarely, if ever, made a pre-confirmation plan payment as required by § 1326 in both its pre- and post BAPCPA forms. This delay has resulted in Creditor being unable to pursue its state law rights against the property and being denied any payments on the debt for at least 27 months, all while debtor remains in possession and occupancy of the property. Creditor has clearly been prejudiced.

Lack of good faith in filing a chapter 13 petition may also constitute cause for dismissal under § 1307(c). In *In re Gier*, the Tenth Circuit set out the bases on which a case could be dismissed as not being filed in good faith.[25] That court held that the same factors to be applied in

---

[23] *See Duncan & Forbes*, *supra* at 35.

[24] § 1307(c)(1).

[25] *Gier v. Farmers State Bank of Lucas, Kansas,* 986 F.2d 1326, 1329 (10th Cir. 1993).

determining whether a chapter 13 plan should be denied confirmation for lack of good faith under § 1325(a)(3) should be applied to this determination.[26] These are the "*Flygare* Factors" and they include –

> (1) the amount of proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.[27]

Not all of the *Flygare* factors can be applied in this case, but those that can weigh against debtor.

Debtor has yet to propose a plan. Her time to do so is running as of this writing. Accordingly, the Court declines to weigh any of the plan-based factors against her. The factor of the debtor's employment history, ability to earn and likelihood of future increases in income weighs against debtor because she has never once been employed when filing a chapter 13 case. It is difficult for this Court to see how she will have regular income in an amount necessary to meet her arrearage obligations to Creditor when she has no job of any kind. The two factors of the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and her motivation and sincerity in seeking Chapter 13 relief weigh heavily against her. She has filed six cases in five years, none of which has been confirmed and five of which have either been voluntarily dismissed or

---

[26] *Id.*

[27] *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir.1983)(quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)).

-14-

dismissed by the Court for failure to follow orders or obey rules. Her prime motivation seems to be avoiding foreclosure as opposed to an orderly classification and payment of her debts through a plan. She attributes all of these failings to her lawyers or her physical indisposition. With one exception, she accepts no responsibility whatever for the dismissal or other failure of any of these cases. Debtor simply cannot be said to have filed this case in good faith.

Several courts have dismissed chapter 13 cases filed by serial filers to avoid foreclosure as not being filed in good faith.[28] The Court recognizes that the Tenth Circuit has held that serial filing, in and of itself, is not evidence of bad faith.[29] Nevertheless, the existence of several *Flygare* factors in this case in addition to the "frequency of filings" factor justifies a dismissal in this case. Debtor has had numerous opportunities to avail herself of meaningful bankruptcy relief here. On none of these occasions has she attempted to complete her case. The only meaningful return any of her creditors have received came as a result of this Court's converting No. 04-14217 to chapter 7 liquidation. All of her other efforts have been aimed at stymying foreclosure.

This Court has no authority to modify the statutory right of redemption granted debtor in the state court foreclosure, but notes that a shortened redemption period is mandatory under KAN. STAT. ANN. § 60-2414(m) where the debtor has failed to pay one-third of the original indebtedness secured by Creditor's lien. That appears to be the case here.

As a further basis for dismissal, this Court notes that debtor's chapter 11 case, No. 08-11511 was dismissed on July 14, 2008 because debtor did not obey this Court's June 25, 2008 order to pay

---

[28] *In re Bucco,* 205 B.R. 323 (Bankr. M.D. Fla. 1996) (3 cases in one year); *In re LaGree*, 285 B.R. 615 (Bankr. E. D. Pa. 2002) (11 cases in 18 years).

[29] *Gier,* 986 F.2d at 1329.

her chapter 11 filing fee and to file missing schedules and documents by July 10, 2008. Section 109(g) provides that an individual debtor who has been a debtor in a case within the preceding 180 days that has been dismissed for the debtor's wilful failure to abide by a court order is ineligible for relief under title 11. Accordingly, debtor is ineligible for relief under title 11 for 180 days after July 14, 2008 and is BARRED from further filings during that time interval in any bankruptcy court in this District, or any other District of the United States.

Xact Funding's motion for stay relief under § 362(d)(4)(B) is DENIED, but its motion to dismiss is GRANTED under § 1307(c) and this case is hereby DISMISSED with prejudice to re-filing for a period of 180 days after July 14, 2008.

# # #